UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI ROBILLIARD,

                Plaintiff,        Civil Action No. 19-12891
                                          Honorable Sean F. Cox
v.                                           Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)

Plaintiff Lori Robilliard ("Robilliard") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 12, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Robilliard is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Robilliard's Motion for Summary

Judgment **(ECF No. 12)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Robilliard was 61 years old at the time of her alleged onset date of June 11, 2016, and at 5'4" tall weighed approximately 230 pounds during the relevant time period. (Tr. 30, 31, 178, 181). She earned an associate's degree as a pharmacy technician. (Tr. 32, 182). In her last job, she worked as a registration clerk in a hospital emergency room, but she stopped working in June 2016 because her employer was unable to accommodate her job restrictions following a work-related back injury. (Tr. 30-31, 34, 182, 189). She now alleges disability primarily as a result of back pain, sciatica, elbow pain, and swelling in her legs. (Tr. 40-41, 181). The only medication she takes for pain is over-the-counter Aleve. (Tr. 43).

After Robilliard's application for DIB was denied at the initial level on March 13, 2017 (Tr. 68-71), she timely requested an administrative hearing, which was held on June 21, 2018, before ALJ Joy Turner (Tr. 26-56). Robilliard, who was represented by attorney Kerry Spencer, testified at the hearing, as did vocational expert ("VE") Harry Cynowa. (*Id.*). On August 31, 2018, the ALJ issued a written decision finding that Robilliard is not disabled under the Act. (Tr. 12-21). On August 16, 2019, the Appeals Council denied review. (Tr. 1-5). Robilliard timely filed for judicial review of the final decision on October 3, 2019. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including

2

Robilliard's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

> claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Robilliard is not disabled under the Act. At Step One, the ALJ found that Robilliard has not engaged in substantial gainful activity since June 11, 2016 (the alleged onset date). (Tr. 14). At Step Two, the ALJ found that she has the severe impairments of spine disorders, major joint dysfunction, and obesity. (*Id.*). At Step Three, the ALJ found that Robilliard's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then assessed Robilliard's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; requires the ability to alternate between sitting and standing every 20 minutes; and must avoid hazardous machinery and unprotected heights. (Tr. 16).

At Step Four, the ALJ found that Robilliard is capable of performing her past relevant work as an emergency room registration clerk, as it is generally performed in the national economy. (Tr. 20). As a result, the ALJ concluded that Robilliard is not disabled under the Act. (Tr. 21).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y*

*of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

In her motion for summary judgment, Robilliard argues that the ALJ erred in: (1) discounting the 2017 and 2018 opinions of her treating physician, Ghazwan Atto, M.D.; and (2) finding that she could return to her past relevant work as generally performed in the national economy. (ECF No. 12, PageID.634-47). Each of these arguments is addressed below.

>     *1.     Substantial Evidence Supports the
>             ALJ's Evaluation of Dr. Atto's Opinions*

The record demonstrates that, throughout 2016, 2017, and 2018, Robilliard treated with Dr. Atto at Downriver Medical Associates for her back pain, hypertension, and leg edema issues. A May 20, 2016 lumbar spine MRI was essentially stable as compared to one performed two years earlier, showing only "mild spondylitic changes[.]" (Tr. 282-83). Robilliard underwent physical therapy, but surgery was not recommended. (Tr. 316).

As the ALJ noted, Dr. Atto prepared two opinions in 2017, the first, on October 23, 2017, indicating that Robilliard had "been disabled from June 13th 2016 until present" due to her impairments, namely "upper back, left mid back pain and left elbow epicondylitis." (Tr. 18, 406). In his second opinion, dated December 22, 2017, Dr. Atto indicated that Robilliard had a history of severe back pain and chronic pain, as well as "[h]yperparathyroidism, swelling in both legs due to long period[s] of sitting and standing with bilateral foot pain which makes it impossible to work a physical job that involves her to sit or stand for a long period of time." (Tr. 18, 407).

Subsequently, on June 1, 2018, Dr. Atto prepared a physical RFC form, indicating that Robilliard could not lift more than five pounds; would have postural limitations (such as rarely climbing stairs, never climbing ladders, rarely crouching/squatting, and rarely stooping/bending); could sit, stand, or walk for up to one hour; and would be absent from work more than four days per month. (Tr. 18, 579-81). That same day, Dr. Atto completed a medical questionnaire, again noting that Robilliard could not sit, stand, or walk longer than one hour and could not lift more than five pounds. (Tr. 583-84).

In her motion, Robilliard argues that the ALJ violated the treating physician rule when she failed to give controlling weight to Dr. Atto's opinions. (ECF No. 12, PageID.634-40). The treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion

7

controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, the ALJ considered Dr. Atto's opinions, saying:

> Dr. Atto's opinions are given little weight for various reasons. Specifically, his opinion contained within exhibit 8F [(Tr. 406-07)] contains statements that are reserved for the Commissioner. Moreover, Dr. Atto's opinions containing extreme limitations and ultimately limiting the claimant to sedentary work do not appear to be supported by the record, including his own treatment notes. For example, most examinations of the claimant have revealed normal findings, normal motor and sensory testing, and have revealed that her gait is normal and steady [(Tr. 266, 268, 271-72, 292, 325, 491-533, 566-78)]. In fact, Dr. Atto's treatment notes which were contemporaneous with his opinions contained within Exhibits 15F and 16F [(Tr. 579-85)] indicate that the claimant exhibited "normal range of motion, no edema or tenderness, no cervical adenopathy … normal reflexes, no cranial nerve deficit, normal muscle tone, and normal coordination" [(Tr. 568)]. As such, these opinions are not supported by the evidence of record and are given little weight.

(Tr. 19).[1] As set forth below, the reasons articulated by the ALJ for discounting Dr. Atto's

---

[1] Immediately following this discussion of Dr. Atto's opinions, the ALJ explained that she nevertheless "assessed a sit/stand option in the [RFC] herein to account for the claimant's subjective complaints of lower back pain and mild findings of lumbar spine tenderness during a few examinations …." (Tr. 19).

8

opinions find support in the record.

First, the ALJ properly found that Dr. Atto's October 2017 opinion that Robilliard had "been disabled from June 13th 2016 until present" (Tr. 406) was a legal conclusion on an issue reserved to the Commissioner. Thus, it was entitled to no special weight. *See* 20 C.F.R. § 404.1527(d)(1); *see also O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 417 (6th Cir. 2020) ("an ALJ may 'reasonably [give] no weight to [a treating physician's] opinion because [the] conclusion that [the claimant] is totally disabled is a determination reserved to the Commissioner'") (quoting *Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016)).

Second, the ALJ properly found that Dr. Atto's opinions were not supported by the record and were belied by routinely normal examination findings. These were relevant considerations and find support in the record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion."). For example, as the ALJ noted, most of Robilliard's physical examinations revealed normal findings,[2] normal

---

[2] In her motion, Robilliard argues that the "normal findings" cited by the ALJ actually included findings of leg swelling and bilateral lower back pain with the need to keep her legs elevated, back pain on musculoskeletal examination, and a neurological examination that was positive for weakness. (ECF No. 12, PageID.637) (citing Tr. 266, 268, 272). Critically, however, many of Robilliard's citations are to her *subjective* complaints, whereas the ALJ specifically indicated that she was addressing the disconnect between Dr. Atto's opinions and the *objective* evidence. (Tr.

9

motor and sensory testing, and a steady and normal gait. (Tr. 19 (citing Tr. 266, 268, 271-72, 292, 325, 491-533, 566-78)). And, as the ALJ noted, Dr. Atto's treatment notes from June 1, 2018 – the same day that he issued his third opinion – indicate that, on that very day, Robilliard exhibited normal range of motion, no edema or tenderness, no cervical adenopathy, normal reflexes, no cranial nerve deficit, normal muscle tone, and normal coordination. (Tr. 568). The foregoing shows that the ALJ's decision to discount Dr. Atto's opinion as inconsistent with his own treatment notes is supported by substantial evidence. *See, e.g., Hannah v. Comm'r of Soc. Sec.,* No. 16-11589, 2017 WL 4946578, at *10 (E.D. Mich. Aug. 15, 2017) (ALJ properly discounted treating physician opinions where they "were not supported by the providers' own treatment notes and were otherwise inconsistent with other substantial evidence in the record").

Elsewhere in her decision, the ALJ noted that Robilliard "attended routine follow-up appointments with her treatment providers and was advised to treat conservatively for these musculoskeletal conditions with medication management and physical therapy." (Tr. 17 (citing Tr. 265-339, 451-533, 566-78)). The ALJ also noted that Robilliard received chiropractic care and acupuncture treatment, which she reported was effective. (Tr. 17

---

19). *See Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule."). Moreover, the ALJ did not say that each examination yielded 100% normal results, but that "most examinations" "revealed normal findings, normal motor and sensory testing, and [] normal and steady [gait]." (Tr. 19). As noted herein, the record evidence cited by the ALJ supports her assertion. Robilliard also mistakenly claims that one of the medical notes referenced by the ALJ, 2F/35, "does not even exist." (ECF No. 12, PageID.637). But, the ALJ accurately cited this note from Dr. Atto, which revealed normal range of motion with no edema or tenderness on musculoskeletal examination, and normal reflexes, normal muscle tone, and normal coordination on neurological examination. (Tr. 19, 325).

(citing 344-51, 396-405, 408-38, 534-65)). The fact that Robilliard received only conservative treatment was a permissible consideration. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving only conservative treatment); *see also Leppien v. Comm'r of Soc. Sec.*, No. 1:15-CV-722, 2016 WL 3661851, at *5 (W.D. Mich. July 11, 2016) ("The Sixth Circuit has found that conservative treatment may constitute a 'good reason' for discounting a treating physician's opinion."). The ALJ added that, ultimately, Robilliard "reported that her back was doing 'fairly well,' that her right foot pain had 'resolved,' and that she was feeling significant improvement[.]" (Tr. 17 (citing Tr. 336, 395, 475)). It was appropriate for the ALJ to consider Robilliard's own statements in these respects. *See Issa v. Comm'r of Soc. Sec.*, No. 15-12327, 2016 WL 4409063, at *2 (E.D. Mich. Aug. 19, 2019) ("[a]n ALJ is entitled to discount a treating physician's opinion "that is contradicted by statements from the claimant himself") (quoting *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697 (6th Cir. 2007)).

In arguing that the ALJ erred in evaluating Dr. Atto's opinions, Robilliard claims that she failed to consider all of the factors for evaluating treating source opinions under 20 C.F.R. § 404.1527(c)(2)-(6). (ECF No. 12, PageID.636). These factors are treatment relationship, supportability, consistency, specialization, and other factors. *See* 20 C.F.R. § 404.1527(c)(2)-(6). As set forth above, however, the ALJ addressed the supportability of the opinions and their consistency with the record. (Tr. 19). And, although the ALJ did not expressly recite the length of Robilliard's treatment relationship with Dr. Atto, the

11

medical records she referenced show the chronology of the treatment – and, indeed, one of Dr. Atto's opinions indicated that Robilliard had been a patient for "many years." (Tr. 583). The ALJ was not required to specifically address every one of these factors to show that she considered them, and the thoroughness of the ALJ's discussion makes clear that she reviewed Dr. Atto's opinions and thus was aware of the frequency and length of this treatment relationship. All told, it is not necessary for the ALJ to address each and every regulatory factor; what matters is that she provide "good reasons" for her evaluation of the relevant medical opinions, which was done here. *See, e.g., Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion.").

Robilliard makes two additional arguments regarding the ALJ's weighing of the medical opinion evidence. First, she claims that while the ALJ afforded "considerable weight" to the February 2017 opinion of consultative examiner Harold Nims, D.O.,[3] she never addressed his abnormal findings in her decision. (ECF No. 12, PageID.638) (citing Tr. 401 ("[s]quatting and bending are fairly painful"), 402 (uses rails to climb stairs)). This argument is without merit. Regardless of any specific examination findings that Dr. Nims

---

[3] Robilliard appears to be confusing the opinion of Dr. Nims with that of State agency physician Quan Nguyen, M.D., who reviewed her records and issued a physical RFC assessment in March 2017. (Tr. 58-67). Indeed, later in her brief, Robilliard references the opinion of "the non-examining, non-treating medical consultant" (ECF No. 12, PageID.639), even though Dr. Nims examined her.

noted, he summarized Robilliard's work-related limitations, saying, "[Robilliard's] ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is mildly impaired" due to the objective examination findings.  (Tr. 401).  This was sufficient, as the ALJ was neither required to discuss every finding in the consultative examination report to show that it was considered, nor was she required to adopt every limitation Dr. Nims suggested.  *See, e.g., Kondrashov v. Comm'r of Soc. Sec.*, No. 16-14044, 2018 WL 1146875, at *5 (E.D. Mich. Feb. 12, 2018) ("Plaintiff … cites no authority requiring an ALJ to explain each and every limitation or restriction he adopts or, conversely, does not adopt from a physician's opinion.").

Finally, Robilliard claims that "the opinion of this consultant was rendered without the benefit of subsequent treatment records from the treating physician and without the benefit of the medical opinion of Dr. Atto[,]" and "[s]aid treatment records consistently reflect that [she] has significant bilateral lower back pain."  (ECF No. 12, PageID.638).  Citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009), Robilliard argues that it was error for the ALJ to give considerable weight to Dr. Nims' opinion, where he "would not have been aware of the additional findings and observations of Dr. Atto."  (*Id.*).  The Court disagrees.  Although Robilliard is correct that she received treatment after Dr. Nims examined her, "an ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record."  *Spicer v. Comm'r of Soc.*

13

*Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409). Here, the ALJ satisfied that requirement, as she explicitly discussed records obtained after Dr. Nims' examination, through June 2018. (Tr. 17 (citing Tr. 566-78)). And, notably, the ALJ assessed a sit/stand option in the RFC, which was not among the limitations found by Dr. Nims, and which takes into account certain findings in Dr. Atto's subsequent treatment notes. (Tr. 19, 579-81, 583-84). Accordingly, the Court finds no error in the ALJ's evaluation of the medical opinion evidence.

2. *Substantial Evidence Supports the ALJ's Step Four Finding*

As set forth above, the ALJ found that Robilliard has the RFC to perform a reduced range of light work. (Tr. 16). Then, at Step Four of the sequential evaluation process, the ALJ found that Robilliard could return to her past work as an emergency room registration clerk, Dictionary of Occupational Titles ("DOT") No. 205.362-018, which is semi-skilled and sedentary per the DOT, but light as she performed it. (Tr. 20). Relying on the VE's testimony (Tr. 49-51), the ALJ found that Robilliard can perform her past relevant work as it was generally performed in the national economy and, thus, is not disabled under the Act. (Tr. 20-21). As explained below, substantial evidence supports this finding.

Robilliard first asserts that "[h]aving found that [she] cannot return to her past relevant work as she performed it, the burden shifts to the Commissioner to establish the existence of other work, in significant numbers, which [she] can perform." (ECF No. 12, PageID.640) (citing *Bowen v. Yuckert*, 482 U.S. 137 (1987)).[4] This is legally incorrect;

---

[4] As the Commissioner points out (ECF No. 14, PageID.680), *Yuckert* does not support Robilliard's argument because in that case, the Supreme Court merely recited the five-step

14

because the ALJ found that Robilliard could perform her past work as generally performed in the national economy, the sequential evaluation ended at Step Four, where Robilliard retains the burden of proof. *See, e.g., Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 424 (E.D. Mich. 2019) (claimant bears the burden of proving that she is precluded from performing her past relevant work, either as previously performed or as generally performed in the national economy).

Robilliard next claims that her past work as characterized by the VE, DOT No. 205.362-018, is actually a "hospital-admitting clerk," which is different from her prior work as an "emergency room registration clerk." (ECF No. 12, PageID.640). Robilliard claims that certain aspects of her job as an emergency room registration clerk – including calling on and escorting patients, helping patients to the bathroom, and providing other needed emergency assistance – differ from the job of a hospital-admitting clerk and take it outside the realm of a sedentary job. (*Id.*, PageID.641-42). The Court disagrees.

As an initial matter, Robilliard's counsel (who also represented her at the administrative hearing before the ALJ) admittedly "failed to identify [such] a conflict at the hearing[.]" (*Id.,* PageID.646). She did not pose any questions to the VE about the alleged conflict between these two positions, nor did she challenge either the VE's description of Robilliard's past work as falling within DOT No. 205.362-018, or its exertional level being sedentary as generally performed and light as performed by

---

sequential evaluation process, but did not hold that the burden shifts to the Commissioner when an ALJ finds that a claimant cannot return to past relevant work as she actually performed it. *See Yuckert*, 482 U.S. at 141-42.

15

Robilliard. (Tr. 49-56). As such, this challenge is waived. *See McCarley v. Berryhill*, No. 16-14036, 2018 WL 1477668, at *2 (E.D. Mich. Mar. 27, 2018) (finding waiver because "the hearing record does not indicate that plaintiff's counsel objected at any time to the vocational expert's testimony, nor did plaintiff's counsel suggest that it conflicted with the DOT … [i]n fact, when the ALJ offered plaintiff's counsel the opportunity to ask questions of the vocational expert, counsel declined the opportunity and allowed the ALJ to conclude the hearing."); *see also Duong v. Comm'r of Soc. Sec.*, No. 1:15-CV-1206, 2016 WL 5423483, at *4 (W.D. Mich. Sept. 29, 2016) (same).

Moreover, even in the absence of waiver, Robilliard's argument fails on the merits. There is no obvious disagreement between the VE's testimony and the DOT. Indeed, the ALJ found, pursuant to Social Security Ruling 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000), that the VE's testimony was consistent with the DOT. (Tr. 20). In doing so, the ALJ relied on the VE's statement that his testimony was consistent with the DOT, with the exception of the sit/stand option, which, while not addressed by the DOT, was based upon his knowledge and experience placing people in the local labor market.[5] (Tr. 51). This was sufficient. *See Colombe v. Comm'r of Soc. Sec.*, No. 19-10687, 2020 WL 1984108, at *10 (E.D. Mich. Apr. 27, 2020) (ALJ fully complied with SSR 00-4p when he asked the

---

[5] Robilliard's related argument – that the VE should have consulted another source of employment information, aside from the DOT, is without merit, since she has not shown that the VE "could not find the job as an emergency room admission clerk as described by Plaintiff[.]" (ECF No. 12, PageID.645). The ALJ properly relied on the DOT, as it is a source of reliable job information recognized by the Social Security Administration. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) ("To establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT. The ALJ takes administrative notice of reliable job information available from various governmental publications such as the DOT ….").

16

VE whether there was any discrepancy between her opinions and the DOT standards for the requirements of the jobs she named).

Finally, Robilliard claims that, at a minimum, the emergency room admitting clerk position should be considered a "composite job," which is a job entailing significant elements of two or more occupations that does not have a counterpart in the DOT. (ECF No. 12, PageID.645). She claims that while the data entry aspect of her position "could very well be consistent with the occupation of hospital-admitting clerk," the VE ignored a second, unspecified component of her job in finding that she could engage in her past work as generally performed. (*Id.*). Again, however, Robilliard acknowledges that her counsel did not raise the issue of a "composite job" "and did not address a conflict between the DOT description and the physical requirements of the job [she] actually performed" at the administrative hearing. (*Id.*, PageID.646). As discussed above, then, Robilliard has waived this challenge. *See McCarley*, 2018 WL 1477668, at *2. Moreover, Robilliard's argument is underdeveloped, as she has failed to show that her past relevant work included significant elements of two or more occupations.[6] Thus, this argument too is without merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision must be affirmed.

---

[6] Robilliard attaches to her motion for summary judgment the job descriptions for the positions of Emergency Medical Services Coordinator and Emergency Medical Technician in order to show that they are not performed at the sedentary level. (ECF No. 12, PageID.653-54). However, she does not claim that she performed the duties of either of these positions.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Robilliard's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: October 20, 2020         s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should

be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 20, 2020.

                                                  s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager